NOT FOR PUBLICATION                               [Docket Nos. 27 & 32]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

EDWARD J. SCOTT,

        Plaintiff,

    v.                                Civil No. 07-1911(RMB)

DETECTIVE CHRISTOPHER BARBER,         OPINION
et al.,

        Defendants.

---

APPEARANCES

Edward J. Scott
    Plaintiff Pro Se

A. Michael Barker, Esq.
Barker Scott & Gelfand
Linewood Greene - Suite 12
210 New Road
Linwood, NJ 08221
    Attorneys for Defendants Barber and Pizzutillo

Stephanie A. Olivo, Esq.
City of Atlantic City - City Hall
City Solicitor's Office - Room 406
1301 Bacharach Boulevard
Atlantic City, NJ 08401
    Attorneys for Defendant City of Atlantic City

**BUMB**, United States District Judge:

**Introduction:**

    This matter comes before the Court upon a motion for summary judgment filed by Defendants Detective Christopher Barber ("Barber") and Patrolman Mark Pizzutillo ("Pizzutillo") and a

1

motion for summary judgment by the City of Atlantic City (the "City"). For the reasons set forth below, this Court will grant these motions.

**Background:**

In light of the nature of the pending summary judgment motion and the circumstances surrounding the briefing thereon, the recitation of the facts underlying this action is based upon a thorough review of the contents of each of the following: Plaintiff's Complaint, the Defendants' Statements of Material Facts and the exhibits submitted in support thereof, including Plaintiff's statements made during his guilty plea and his deposition, and Plaintiff's opposition brief.[1]  This Court will review this facts in a light most favorable to the Plaintiff, the non-moving party.

On September 8, 2006, Scott was walking on Pacific Avenue in Atlantic City and turned onto Florida Avenue when "several Atlantic City Police Officers jumped out of a unmarked solid black van and approached me and another gentlem[a]n that was walking approximately 15 feed ahead . . . ." Plaintiff states that the man walking in front of him began to elude the police and that he just stood there observing. He avers that without warning, he was tackled by officer Christopher Barber,

---

[1] Plaintiff filed no separate statement of facts.

had his arm twisted behind his back, was handcuffed, and searched for contraband.  Scott avers that Barber bent his left wrist with such pressure that the tendon and/or ligaments snapped and dislocated.

Scott was then transported to the Atlantic City police station and was placed in a chain-belt and handcuffs and escorted to a cell.  While in the cell, Scott avers he made several requests for information but his requests went unheeded.  Because he was in extreme pain, Scott attempted to get the officers' attention by throwing toilet paper at the cell camera and knocking the cell door with the chain connected to his handcuffs.  Pizzutillo then entered the cell and ordered Scott to drop the belt chain on the floor; because the chain was attached to the handcuffs, he did not drop it and Pizzutillo sprayed Scott in the face with "mace."  Plaintiff avers that the Officers fabricated the charges against him to justify their actions.

The Defendants in this case paint a dramatically different picture.  For example, Barber avers that on September 8, 2006, that, after receiving a police communications call regarding illegal narcotics activity in the area, Barber observed two men, one later identified as Scott, walking closely together towards a vacant lot and, eventually, saw Scott hand the other man paper currency and that Scott was handed a small plastic bag.  Barber believed he had witnessed a hand-to-hand

narcotics sale.

Barber informed the other members of the ERT of what he saw, and the other officers pulled over.  Officers Robert Dodson and Officer Ed Leon approached Scott and gave the verbal command to "stop."  Scott began to flee but was pursued by Dodson and Leon.  During the pursuit, the officers observed Scott throw a small plastic bag containing a powdery substance, that later tested positive for cocaine.  After a brief struggle, the Officers were able to place Scott in handcuffs.

After he was placed in handcuffs, a communications check revealed that Scott had two active warrants for his arrest.  Scott was transported to the Atlantic Public Safety Building ("PSB") for processing.  The officers who transported Scott reported that during transport, he was irate, shouted vulgar profanities and was banging his head.  This behavior continued after his arrival at the PSB.

Despite being told to calm down, his behavior continued.  At this point, Officer Pizzutillo,[2] and another officer noticed Scott covering the cell camera lens with toilet paper.  Scott also placed a mattress against the cell door.  Because Scott repeatedly covered the lens, the officers placed

---

[2] While Plaintiff avers that Pizzutillo was the officer who handcuffed him on his arrival to the PSB, Defendants' exhibits show that Pizzutillo only came into contact with Plaintiff once he was placed in the holding cell.  Defs.' Ex. 5, 11, & 12.

him in handcuffs and shackles connected by a waistband, known as a "belly chain."  After the officers left the cell, Scott managed to slip out of the waistband and began swinging the chain against the walls and the cell door.  Scott confirmed that he did, indeed, swing the chain around the cell in his deposition. Defs.' Ex. 5 37:1-39:11.

In response to the noise, Pizzutillo and the other officer returned to the cell.  When they entered, Scott continued swinging the chains in their direction.  In response, Pizzutillo sprayed Scott with pepper spray to subdue him.  After the pepper spray exposure, Scott was transported to the Atlantic City Medical Center for treatment.  The hospital records reveal that Scott was verbally abusive and spat at the staff.  Defs.' Ex. 14. At the hospital, Scott complained of the effects of the mace and of back and leg pain.  Id.  He tested positive for cannabis and cocaine.  Defs.' Ex. 16.

On November 1, 2006, Scott was indicted for aggravated assault, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. Defs.' Ex. 17.  On Dec. 14, 2006, Scott was indicted for possession of a controlled dangerous substance.  Defs.' Ex. 18.  Scott pled guilty to an amended charge of wandering for the purpose of obtaining a controlled dangerous substance and to aggravated assault on a police officer.

5

Scott filed a complaint in the Superior Court of New Jersey, Atlantic County on March 19, 2007, which was removed to this Court by Defendants on April 24, 2007.  Plaintiff filed an Amended Complaint with this Court on April 18, 2007 naming Detective Christopher Barber, Officer Mark Pizzutillo and the Atlantic City Police Department as Defendants.  In the Amended Complaint, Scott alleges that his Fourth and Eighth Amendment rights were violated when he was subjected to an unreasonable search and seizure, false arrest, assault and cruel and unusual punishment.

More specifically, Scott claims that Barber "and numerous other Atlantic City Police officers" subjected him to unreasonable stop, search, seizure and arrest that resulted in injury and "false incarceration."  He also avers that Officer Pizzutillo subjected him to cruel and unusual punishment by assaulting him with mace without provocation.

**Standard of Review:**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

6

fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)). "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

**Discussion:**

While Plaintiff did not file opposition to the currently pending motions, this Court will utilize the opposition filed on June 11, 2008, to a substantially similar motion that was withdrawn in response to an Order filed by the Court on June 6, 2008. [Docket No. 40].

### a) Atlantic City Police Department

As an initial matter, the Court notes that Plaintiff added the Atlantic City Police Department in his Amended

Complaint [Docket No. 18].[3]  Noting that a police department cannot be sued as a separate entity for purposes of § 1983 liability, see Briggs v. Moore, 251 Fed. Appx. 77, 79 (3d Cir. Oct. 13. 2007)(holding that police department "would not be considered separate from the municipality such that it could be sued for the purposes of § 1983."), this Court construes Plaintiff's Amended Complaint as asserting a respondeat superior claim against the City.  [Docket No. 40].

Even construing Plaintiff's claims as made directly against the City, this Court finds that the City is entitled to summary judgment.  As stated above, Plaintiff asserts claims for alleged violations of his Constitutional rights pursuant to 42 U.S.C. § 1983.  The only basis of liability for these violations against the City appears to be based upon a respondeat superior theory; nowhere does Plaintiff allege that the City of Atlantic City had a custom or policy that was the moving force behind the alleged violations.  As such, and because the law is clear that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory, Plaintiff's 1983 claim asserted against the City will be dismissed.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

---

[3] Plaintiff's Amended Complaint governs the claims alleged and has been deemed to incorporate the allegations in the originally filed Complaint. [Docket No. 40].

### b) Defendants Barber and Pizzutillo

Pursuant to his Amended Complaint, Scott alleges that his Fourth and Eighth Amendment rights were violated when he was subjected to an unreasonable search and seizure, false arrest, assault, cruel and unusual punishment, and "false incarceration." Construing these claims liberally, it appears that Plaintiff has averred causes of action for false arrest and malicious prosecution, pursuant to the Fourth Amendment and the New Jersey Constitution and excessive force and cruel and unusual punishment,[4] under the Fourth and Fourteenth Amendments and New Jersey Constitution.[5]

---

[4] To the extent that Plaintiff's Complaint alleges inadequate medical treatment at the Atlantic City Medical Center, those claims are not cognizable here as they do not involve the above-named Defendants and will be dismissed.

[5] Despite reference to the Eighth Amendment, the Court will not apply the same as it is inapplicable to Scott's excessive force claims. Excessive force cases fall into three categories: (1) those involving the use of force to effectuate an arrest; (2) those against a person in police custody and/or pretrial detainee; and (3) those involving the use of force against a convicted person. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Fourth Amendment standard is applied to those cases specifically directed to the method of arrest and seizure. Custody and detention cases are subject to the Fourteenth Amendment substantive due process analysis; and cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment. Id. at 392-94. Because Scott's excessive force claims appear relate to the force used to effectuate arrest and the forced used while he was a pretrial detainee, the Fourth and Fourteenth Amendments are applicable.

*I) False Arrest*

A cause of action exists under 29 U.S.C. § 1983 if an arrest has been made without probable cause. <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988). Defendants Barber and Pizzutillo argue that Scott's false arrest claim must be dismissed pursuant to the doctrine set forth in <u>Heck v. Humphry</u>, 512 U.S. 477 (1994), because a favorable judgment on these claims would necessarily imply the invalidity of Plaintiff's convictions, for wandering to obtain or distribute a controlled dangerous substance and aggravated assault, which have not been overturned. <u>See</u> <u>Williams v. Consovoy</u>, 453 F.3d 173, 177 (3d Cir. 2006) (stating that the threshold question under <u>Heck</u> is whether success on a § 1983 action would "necessarily demonstrate" the invalidity of the underlying offense, which would in turn render a claim incognizable under <u>Heck</u>); <u>Dyer v. Lee</u>, 488 F.3d 876 (11th Cir. 2007)("for <u>Heck</u> to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory.").

While Scott has presented no evidence that Barber was actually the arresting officer, the individual Defendants nevertheless argue that Scott's guilty plea and conviction for wandering to obtain or distribute a controlled dangerous substance in violation of N.J. Stat. Ann. § 2C:33-2.1 bars his

false arrest claim.[6]  If this Court were to find that Barber falsely arrested Plaintiff for wandering to obtain a controlled substance without probable cause, this Court would necessarily undermine the legality of Plaintiff's conviction (a conviction that has not been overturned).  Thus, the Heck doctrine applies.  See Gibson v. Superintendent of N.J. Dept. of Law and Pub. Safety, 411 F. 3d 427, 447 (3d Cir. 2005); Hayhurst v. Upper Makefield Township, No. 06-3114, 2007 U.S. Dist. LEXIS 44762 at * 23-24 (E.D. Pa. June 20, 2007).

With regard to the Officer Pizzutillo, the text of Plaintiff's own Complaint makes clear that Scott did not even come into contact with Officer Pizzutillo until after he was arrested.  Therefore, he cannot be held liable for false arrest.  See Cox v. Hackett, 2006 U.S. Dist. LEXIS 51473 at * 20-21 (E.D. Pa. July, 27, 2006)(finding no false arrest liability where officer was not involved in arrest).

However, Pizzutillo filed charges against Scott based on assaultive activities while in detention.  To the extent Plaintiff's false arrest claim can be construed as one for unreasonable seizure predicated on lack of probable cause for filing said charges, Plaintiff's guilty plea bars this claim; to find that Scott had a viable action would undermine his

---

[6] See Gilles v. Davis, 427 F.3d 197, 209 n.8 (3d Cir. 2005) (finding that a guilty plea is sufficient to bar a subsequent Section 1983 claim).

11

conviction for aggravated assault.  See Shilling v. Brush, 2007 U.S. Dist. LEXIS 4330 at *58 (M.D. Pa. Jan 22, 2007) ("viable claims for false arrest require a lack of probable cause, and probable cause is established by Plaintiff's guilty plea.").[7]

Because Scott's false arrest claims, if successful, would necessarily negate his convictions, as set forth above, these claims must be dismissed without prejudice.

ii) *Excessive Force*

a) Officer Barber

In his Complaint, Scott avers that Officer Barber tackled him to the ground, twisted Scott's arm and proceeded to "bend [Scott's] left wrist with such pressure that it causes the tenden [sic] or ligiments [sic] to snap and dislocate. . . ." [Docket No. 1 at 3].  However, based on the evidence of record, including Plaintiff's own statements, this Court finds that no reasonable jury could find that Barber made any physical contact with Plaintiff, let alone the application of excessive force. Scott has failed to even attempt to refute the evidence set forth by Defendants that Barber was not the officer who handcuffed him. For example, the police reports filed in support of the motion

---

[7] This Court need not engage in a separate analysis under the New Jersey Constitution because the analysis of claims under state constitutional law is similar to the analysis under the Fourth Amendment.  See Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000)

for summary judgment make clear that Barber was not the arresting officer who placed handcuffs on the Plaintiffs. See Defs.' Ex. 1-4 (indicating that Barber stayed near the police van and that Officers Leon and Dodson handcuffed Scott). Plaintiff's opposition does nothing to undermine the accuracy of these records. In fact, Scott appends many of the same exhibits to his opposition papers. Moreover, when asked in his deposition, "do you know who handcuffed you?" Scott answered, "Not exactly, no." Defs.' Ex. 5 at 30:7-8.

In order to survive summary judgment Scott must do more than rest on his mere allegation that Barber applied excessive force. See Pa. Prison Soc'y v. Cortes, 508 F.3d 156, 161 (3d Cir. 2007)("While generalized allegations of injury may suffice at the pleading stage, a plaintiff can no longer rest on such 'mere allegations' in response to a summary judgment motion, but must set forth 'specific facts' by affidavit or other evidence."). Because Scott has failed to demonstrate that any material issue of fact exists as to whether Barber applied any force to Scott, Defendants' motion will be granted as to this claim. Therefore, Scott's excessive force claim against Barber will be dismissed with prejudice.

### b) Officer Pizzutillo

It is undisputed that Scott was sprayed with pepper

spray by Officer Pizzutillo when he entered Scott's cell. Because Scott was a pre-trial detainee at the time of this force was applied, the Due Process protections of the Fourteenth Amendment provide the analytical framework for this claim. Hubbard v. Taylor, 2008 U.S. App. LEXIS 16545 (Aug. 5, 2008); Fuentes v. Wagner, 206 F.3d 335, 346-347 (3d Cir. 2000). A violation of the Due Process clause will be found where the detainee shows "that the force used amounts to a wanton infliction of punishment, as opposed to an amount rationally related to exercising control." Travillion v. Leon, 248 Fed. Appx. 353, 356 (3d Cir. 2007)(citing Fuentes v. Wagner, 206 F.3d 335 (3d Cir. 2000)); Lear v. Township of Piscataway, 236 N.J. Super. 550 (N.J. App. Div. 1989)(noting that a "determination must be made as to whether a reasonable relationship exists between the physical restrictions imposed during pretrial detention and the fulfillment of a legitimate governmental function.").

Officer Pizzutillo argues that Plaintiff's excessive force claim against him is barred the Heck doctrine, described above, because Scott pled guilty to aggravated assault on Pizzutillo and that conviction has not been overturned. In order for Scott to succeed on his excessive force claim, he would have to demonstrate that the force applied amounts to a wanton infliction of punishment, as opposed to an amount rationally related to

exercising control.  By pleading guilty to aggravated assault for conduct that immediately preceded the responsive application of force by Pizzutillo, Scott implies that the use of force by Officer Pizzutillo was rationally related to exercising control in the situation.  In fact during his plea hearing, Scott agreed that his behavior when the officers came into his cell was "out of control and violent."  Defs.' Ex. 7 at 11:15-16.  He also admitted that his behavior was to a point such that the officers were reasonably in fear that he could create injury such that they had to approach him with pepper stray.  Id. 11:24-12:8.  Thus, Scott's attempt at an excessive force claim against Officer Pizzutillo fails because, based on the particular facts of this case, a finding that Pizzutillo employed excessive force would necessarily imply the invalidity of his aggravated assault conviction.  Based on Scott's conviction, that has not been overturned, the force applied by Pizzutillo was contemporaneous to the assault by the Plaintiff and a reasonable exercise of control under the circumstances.  See Jennings v. Fetterman, 197 Fed. Appx. 162 (3d Cir. 2006); Smith v. Mitchell, No. 97-6115, 2000 U.S. Dist. LEXIS 20778 (D.N.J. Nov. 21, 2000).[8]  As the claim against Officer Pizzutillo is barred by Heck, Plaintiff's

---

[8] Again there is no need for a separate analysis under New Jersey constitutional law.  See Norcross v. Town of Hammonton, 2008 U.S. Dist. LEXIS 9067 at * 11 (D.N.J. Feb. 5. 2008)(citing cases regarding similar analysis of excessive for claims).

claim will be denied without prejudice.

       iii) Malicious Prosecution

To the extent Plaintiff's Complaint, as amended, can be construed to state a malicious prosecution claim, this Court finds that such a claim asserted pursuant to either state or federal law fails.  To prove malicious prosecution under Section 1983 when the claim is brought pursuant to the Fourth Amendment, a plaintiff must show that:

> (1) the defendant initiated a criminal proceeding;
> (2) the criminal proceeding ended in his favor;
> (3) the defendant initiated the proceeding without probable cause;
> (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)); see Helmy v. City of Jersey City, 178 N.J. 183 (2003) (under New Jersey law, a plaintiff must prove (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff).  Because Scott pled guilty to wandering to obtain a controlled dangerous substance and

aggravated assault on a law enforcement officer, he cannot meet the prima facie prong of favorable termination. See Fuchs v. Mercer County, 2008 U.S. App. LEXIS 547 at *5 (3d Cir. Jan. 11, 2008) (stating that "guilty plea did not constitute a "favorable termination" for purposes of bringing a subsequent § 1983 suit."). Therefore, Scott's malicious prosecution claims will be dismissed without prejudice.

       iv)   *State Law Tort Claims*

Defendants aver that Scott's state law tort claims for assault, false arrest and false imprisonment necessarily fail because there has been no notice filed against either individual Defendant as required pursuant to the New Jersey Tort Claims Act ("TCA"). N.J. Stat. Ann. § 59:8-3.

The TCA mandates that a plaintiff file a notice of claim within ninety days of the accrual of the cause of action against a public entity or employee, N.J. Stat. Ann. § 59:8-8, unless the claimant demonstrates good cause to justify a late filing, N.J. Stat. Ann. § 59:8-9. Pursuant to Valez v. City of Jersey City, 180 N.J. 284, 297 (2004), the notice requirement applies to intentional tort claims against public employees commenced after June 29, 2004. However, "a public employee is not immune if he or she engaged in conduct that 'constituted a crime, actual fraud, actual malice or willful misconduct.'" Toto

17

v. Enuar, 2008 N.J. LEXIS 897 at * 26 (Aug. 4, 2008)(quoting Valez 180 N.J. at 294).

Scott does not set forth any evidence that he filed such notices within the requisite time period and he does not set forth good cause as to why he should be allowed a late filing. That being said, the issue that remains is whether or not the alleged assault, false arrest and false imprisonment allegations constitute the type of willful misconduct carved out from TCA notice coverage. While "willful misconduct" has not been explicitly defined, it is "clear that willful misconduct will fall somewhere on the continuum between simple negligence and the intentional infliction of harm." Alston v. City of Camden, 168 N.J. 170, 185 (2001).

Based on the above findings, there is no way that Scott can demonstrate that the Officers actions constituted willful misconduct at this time; unless and until his convictions are overturned, no reasonable jury could find that the Officer's actions were not supported by probably cause or not rationally related to the exercise of control. Thus, Plaintiff's tort claims will be dismissed without prejudice.

An appropriate Order will issue this date.

Dated: August 11, 2008         s/Renée Marie Bumb
                               RENÉE MARIE BUMB
                               UNITED STATES DISTRICT JUDGE